## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CR-12-297-R |
| | ) | |
| PEDRO JUAREZ, | ) | |
| SIMONA GALLEGOS, | ) | |
| a/k/a SIMONA JUAREZ, | ) | |
| SERAPIO SANCHEZ, | ) | |
| THEODORE LEROY HENRY, | ) | |
| a/k/a Sombra, | ) | |
| a/k/a Shadow, | ) | |
| ISMAEL GARCIA JR., | ) | |
| a/k/a Tocayo, | ) | |
| a/k/a Pelon, | ) | |
| GENOVEVA TELLO-AGUILERA, | ) | |
| a/k/a Genoveva Tello, | ) | |
| RAMON IBARRA DOMINGUEZ, | ) | |
| a/k/a Monchis, | ) | |
| a/k/a Ramon I. Dominguez, | ) | |
| PAMELA DIANE DAVIS, | ) | |
| REFUGIO RODRIGUEZ, | ) | |
| a/k/a Bro, | ) | |
| DANIEL AVILA, | ) | |
| a/k/a Brujo, | ) | |
| a/k/a Daniee Avila | ) | |
| a/k/a Daniel Avila-Mendez, | ) | |
| ROBERT JAMES TUMA, | ) | |
| FRANCISCA BERNAL, | ) | |
| a/k/a Francisca Adame, | ) | |
| BANI MORENO, | ) | |
| a/k/a Luis, | ) | |
| JAIME ORTIZ, | ) | |
| SALVADOR SAMANIEGO-PEREZ, | ) | |
| a/k/a Salvador Samiego Perez, | ) | |
| EDGARDO JOSUE AGUILAR, | ) | |
| a/k/a Arana. | ) | |
| JERRY ROSS CAWOOD, | ) | |
| a/k/a Cracker, | ) | |
| Defendants. | ) | |

## MOTION FOR BILL OF PARTICULARS AND

## MEMORANDUM IN SUPPORT

Comes now the defendant, Jerry Ross Cawood, by and through his counsel of record, William H. Campbell, and moves this Court pursuant to *Rule* 7(f) of the *Federal Rules of Criminal Procedure* to grant his motion for a bill of particulars for Counts 1 and 2 of the Indictment.

The information sought by Mr. Cawood's motion is necessary to enable him to prepare an effective defense to the Government's allegations. Accordingly, this Court should, following applicable precedent, order the Government to provide the requested bill of particulars.

The body of the single count Indictment reads as follows:

From in or about early 2011, and continuously thereafter until November 1, 2012, in the Western District ofOklahoma, and elsewhere, PEDRO JUAREZ, SIMONA GALLEGOS, a/k/a Simona Juarez, SERAPIO SANCHEZ, THEODORE LEROY HENRY, a/k/a Sombra, a/k/a Shadow, ISMAEL GARCIA, JR., a/k/a Tocayo, a/k/a Pelon, GENOVEVA  TELLO-AGUILERA, a/k/a Genoveva Tello, RAMON IBARRA DOMINGUEZ, a/k/a Monchis, a/k/a Ramon I. Dominguez, PAMELA DIANE DAVIS, REFUGIO RODRIGUEZ, a/k/a Bro, DANIEL AVILA, a/k/a Brujo, a/k/a Daniee Avila, a/k/a Daniel Avila-Mendez,   ROBERT JAMES TUMA, FRANCISCA BERNAL, a/k/a Francisca Adame, BANI MORENO, a/k/a Luis, JAIME ORTIZ, SALVADOR SAMANIEGO-PEREZ, a/k/a Salvador Samiego Perez, EDGARDO JOSUE AGUILAR, a/k/a Arana, and JERRY ROSS CAWOOD, a/k1a Cracker knowingly and intentionally combined, conspired and agreed with each other, with Iran Juan Zamarripa-Carrillo, a/k/a Pelon, Alfredo Resendiz-Avila, a/k/a Piojo, Jose Antonio Torres, a/k/a Compadrito, and with others both known and unknown to the Grand Jury, to interdependently possess with intent to distribute and to distribute at least 85 pounds of methamphetamine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 841(a)(I).

## MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished by the following means, among others:

1. During the period of the conspiracy, Iran Juan Zamarripa-Carrillo, a/k/a Pelon, and others arranged with sources of supply to import and transport multi-pound quantities of methamphetamine from Mexico, California, and Arizona to Oklahoma City, Oklahoma, and elsewhere, for the purpose of distributing illegal narcotics.

2. During the period of the conspiracy, members of the conspiracy transported multi-pound quantities of methamphetamine to the Western District of Oklahoma, and elsewhere, in semi-tractor trailers. The methamphetamine that was to be distributed in the Western District of Oklahoma was delivered to Iran Juan Zamarripa Carrillo, a/k/a Pelon, Alfredo Resendiz-Avila, a/k/a Piojo, and others at truck stops just west of Oklahoma City on 1-40, at exits 140 and 142. Members of the conspiracy transported bulk shipments of U.S. currency consisting of drug proceeds from the Western District of Oklahoma, and elsewhere, in semi-tractor trailers.

3. During the period of the conspiracy, drugs and money were stored, maintained, and distributed at various residences and locations. On an almost daily basis, Alfredo Resendiz-Avila, a/k/a Piojo, and others, would remove a sufficient quantity of methamphetamine stored at 9010 N. Rockwell Drive, Oklahoma City, Oklahoma, and transport it to several residences and other places for the delivery, storage, and distribution, including, but not limited to, a residence at 44 SE 35th Street, Oklahoma City, Oklahoma (Resendiz and others); a residence at 2212 SW 59th Place, Oklahoma City, Oklahoma (Resendiz and others); 2418 SW 59th, Oklahoma City, Oklahoma (EI Lagunero Car Wash); 5001 Brookdale Drive, Oklahoma City, Oklahoma (GENOVEVA TELLO-AGUILERA, a/k/a Genoveva Tello); 620 SW 59th Street, Oklahoma City, Oklahoma (PEDRO JUAREZ, SIMONA GALLEGOS, a/k/a Simona Juarez); 1327 SW 21st Street, Oklahoma City, Oklahoma (THEODORE HENRY, a/k/a Sombra, a/k/a Shadow); and 1124 SW 24th, Oklahoma City, Oklahoma (FRANCISCA BERNAL, a/k/a Francisca Adame).

4. During the period of the conspiracy, members of the conspiracy frequently conducted drug transactions at several locations, including, but not limited to, the McDonald's Restaurant at 4418 S. Shields, a grocery store at SW 59th and Walker, the EI Lagunero Car Wash at 2418 SW 59th Street, a gas station across from the car wash, and various residences.

5. During the period of the conspiracy, methamphetamine customers

would contact Iran Juan Zamarripa-Carrillo, a/k/a Pelon, and Alfredo Resendiz-Avila, a/k/a Piojo, on their cell phones, and contact Alfredo Resendiz-Avila, a/k/a Piojo and others in person, to discuss the acquisition of methamphetamine. During the majority of the time frame of the conspiracy Iran Juan Zamarripa-Carrillo, a/k/a Pelon, lived in Corpus Christi, Texas. When methamphetamine customers called Iran Juan Zamarripa Carrillo, a/k/a Pelon, in Texas, he would in turn call Alfredo Resendiz-Avila, a/k/a Piojo, and others in Oklahoma City, to further coordinate the details of the drug transactions, i.e., the location of the drug deals, the quantity of methamphetamine being purchased and the amount to be paid for the drugs.

6. During the period of the conspiracy, Iran Juan Zamarripa-Carrillo, a/k/a Pelon, Alfredo Resendiz-Avila, aJk/a Piojo, and others would distribute the methamphetamine to Jose Antonio Torres, aJk/a Compadrito, Alma Marquez, PEDRO JUAREZ, SERAPIO SANCHEZ, THEODORE LEROY HENRY, a/k/a Sombra, a/k/a Shadow, GENOVEVA TELLO-AGUILERA, a/k/a Genoveva Tello, PAMELA DIANE DAVIS, REFUGIO RODRIGUEZ, a/k/a Bro, DANIEL A VILA, a/k/a Brujo, a/k/a Daniee Avila, a/k/a Daniel Avila-Mendez, ROBERT JAMES TUMA, BANI MORENO, a/k/a Luis, JAIME ORTIZ, SALVADOR SAMANIEGO-PEREZ, alk/a Salvador Samiego Perez, EDGARDO JOSUE AGUILAR, a/k/a Arana, JERRY ROSS CAWOOD, a/k/a Cracker, and others. These individuals would in turn redistribute the methamphetamine to other customers for further distribution and/or personal use.

7. During the period of the conspiracy, other members of the conspiracy, ISMAEL GARCIA, JR., a/k/a Tocayo, a/k/a Pelon, and RAMON IBARRA DOMINGUEZ, a/k/a Monchis, a/k/a Ramon I. Dominguez, facilitated the distribution of methamphetamine by calling and ordering quantities of methamphetamine and establishing the location for deliveries to Anthony R. Gonzales, a/k/a Cholo, PAMELA DIANE DAVIS, and others. Still others, including SIMONA GALLEGOS, a/k/a Simona Juarez, and FRANCISCA BERNAL, a/k/a Francisca Adame, facilitated the distribution of methamphetamine by picking up or allowing methamphetamine to be delivered to them, for them to provide to other co-conspirators for re-distribution. SIMONA GALLEGOS, a/k/a Simona Juarez, also delivered money to Alfredo Resendiz-Avila, a/k/a Piojo, and others as payment for methamphetamine provided to PEDRO JUAREZ for re-distribution.

8. During the period of the conspiracy, drug proceeds were collected by

Alfredo Resendiz-Avila, a/k/a Piojo, counted by Alfredo Resendiz-Avila, alk/a Piojo, and others. The drug proceeds obtained from the sale of methamphetamine to co-conspirators and others, were tallied and provided to Iran Juan Zamarripa-Carrillo, a/k/a Pelon. The drug proceeds were maintained at 9010 N. Rockwell Drive and at that location were packaged in a particular manner for shipment back to the sources of supply.

9. During the period ofthe conspiracy, SERAPIO SANCHEZ, ROBERT JAMES TUMA, BANI MORENO, a/k/a Luis, and others possessed firearms to protect the drugs and drug proceeds in their possession.

10. During the period ofthe conspiracy, Iran Juan Zamarripa-Carrillo, alk/a Pelon, Alfredo Resendiz-Avila, a/k/a Piojo, Jose Antonio Torres, alk/a Compadrito, Alma Marquez, PEDRO JUAREZ, SIMONA GALLEGOS, a/k/a Simona Juarez, SERAPIO SANCHEZ, THEODORE LEROY HENRY, a/k/a Sombra, a/k/a Shadow, ISMAEL GARCIA, JR., a/ka Tocayo, a/k/a Pelon, GENOVEVA TELLOAGUILERA, a/k/a Genoveva Tello, RAMON IBARRA DOMINGUEZ, a/k/a Monchis, a/k/a Ramon I. Dominguez, REFUGIO RODRIGUEZ, a/k/a Bro, FRANCISCA BERNAL, a/k/a Francisca Adame, BANI MORENO, a/k/a Luis, EDGARDO JOSUE AGUILAR, a/k/a Arana, JERRY ROSS CAWOOD, a/k/a Cracker, and others, maintained contact with each other and with other co-conspirators using cellular telephones for oral and text communications, to arrange for acquisition and distribution of methamphetamine, to arrange for the collection of proceeds, and otherwise facilitate the conspiracy. The majority ofthese calls were in the Spanish language. During conversations, coded words were frequently used to mean different quantities of drugs, i.e., "carton" was code for one ounce (28.35 grams) of methamphetamine, "michelada" was code for one-half ounce of methamphetamine (14 grams), "limon" was code for one-quarter ounce of methamphetamine (7 grams), "salt" was code for one-eighth of an ounce of methamphetamine (3.5 grams), and "seven baros" was code for $700. ("Two baros" would be code for $200.)

All in violation of Title 21, United States Code, Section 846, the penalty for which is found in Title 21, United States Code, Section 841 (b)(1)(A).

The defendant moves the Court for an order requiring the Government to state the following information in the Bill of Particulars:

5

1. The exact date, time, and place when Mr. Cawood first participated in any act in support or in furtherance of the claimed conspiracy;

2. The exact dates, times, and places when Mr. Cawood engaged in any subsequent act in support of the claimed conspiracy and the specific acts he allegedly committed in support of the alleged conspiracy;

3. A precise description of the nature of any acts or statements Mr .Cawood allegedly engaged in or uttered to further the alleged conspiracy. Include the name, address and phone number of each person present when such acts were committed or such statements were made;

4. Exactly how state or federal law enforcement officials determined Mr. Cawood was involved in the charged conspiracy. Produce all information and evidence in support of this belief;

5. The exact date, time, and place when the conspiracy began. State the names, addresses and phone numbers of all persons present when the conspiracy began;

6. The exact date, time and place, and when/where Mr. Cawood joined the conspiracy.  Further, state the names, addresses, and phone numbers of all persons present when Mr.Cawood joined the conspiracy;

7. The precise quantity of methamphetamine, if any, that Mr. Cawood agreed or consented to distribute.  State the date and location of each such alleged agreement. List the names, addresses and phone numbers of all persons present at each alleged agreement;

8. The precise quantities of methamphetamine the alleged conspirators distributed

during the alleged conspiracy;

9. Precisely describe the conduct of alleged co-conspirators in furtherance of the conspiracy that was known to Mr. Favela-Rojo or was reasonably foreseeable by him.

10. A precise description of information or evidence, including the names, addresses and phone  numbers of all persons having  knowledge, demonstrating that Mr. Cawood conspired with anyone;

11. Identify and provide addresses and phone numbers of all persons who were allegedly co-conspirators or involved in any conspiracy with Mr. Iran Juan Zamarripa-Carrillo, Alfredo Resendiz-Avila, or  Jose Antonio Torres , other than those named in this Indictment as either charged or as unindicted co-conspirators. As to all such alleged participants, specify when they joined or left the conspiracy and exactly what their participation was;

12. Specify whether the alleged conspiracy was express or implied on the part of Mr. Cawood and each co-conspirator. If express, state the express agreement. If implied from acts, any meetings or statements and a description of them.

13. The identity or a full or partial description of the "known" and/or "unknown" persons alleged to part of the conspiracy.

## ARGUMENT

A bill of particulars  should  be ordered where it will avoid or minimize surprise at trial and permit the preparation of an adequate defense. "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense." *United States v. Levine*, 983

F.2d 165, 166-67 (10th Cir.1992) (citations and internal quotation marks omitted). A bill of particulars is "appropriate to permit a defendant to identify with sufficient particularity the nature of the charge against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted for the same offense." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. l988) (quoting *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). All of these purposes will be served by a bill of particulars in this case. The Government may not respond that the defendant should know the particulars demanded, for he is presumed to be innocent; in any event, the request for a bill of particulars is aimed at the facts as alleged by the Government, not as they may have actually occurred. *See, e.g.*, *United States v. Ramirez*, 602 F. Supp. 783 (S.D.N.Y. 1985).

For the  foregoing reasons,  Mr. Cawood asks this Court  to grant his motion ordering  the Government to provide a bill of particulars with respect  to Count 1.

Defendant Cawood  notes the only participation specifically alleged against him involves a small approximately four ounce single purchase.  The Government provided discovery does not depict any lengthy ongoing relationship between this Defendant and the others named hereinl.

Without the requested bill of particulars the Defendant is placed in a position of being unable to properly defend this charge or lay a claim of jeopardy if he should be found not guilty at jury trial.

For all of the reasons set forth above, Mr.Cawood asks this Court to grant his

motion and order the Government to provide a bill of particulars with respect to this

Indictment.

Respectfully Submitted,

S/ *William H. Campbell*
William H. Campbell, OBA #1454
Attorney for Defendant
925 N.W. Sixth Street
Oklahoma City, Oklahoma 73106
(405) 232-2953

## Certificate of Service

I hereby certify that on February 28, 2013, I electronically transmitted the attached document to the Clerk of the Court  using the  ECF system for filing and transmittal of a  Notice of Electronic Filing to all  ECF registrants  appearing in this case,  no non ECF parties are known to the Defendant at this time.

S/ *William H. Campbell*
William H. Campbell

9